IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | No. 13-cr-929 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| STEVEN G. ZAMIAR, | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant, Steven G. Zamiar, moves for a new trial [75] pursuant to Federal Rule of Criminal Procedure 33, asserting that the Court denied Zamiar a fair trial by restricting the evidence, by allowing improper argument by the prosecution in closing, and erroneously instructing the jury on the elements of the offense. For the reasons stated herein, the Court denies the motion.

**Background**

On December 12, 2013, the grand jury returned a two count indictment charging Steven G. Zamiar with violations of 18 U.S.C. § 242 in two unrelated incidents. This Court granted the defendant's motion to sever the two counts and the government elected to proceed to trial on Count II first. Count II of the indictment charges that Zamiar violated James Snyder's civil rights by striking him repeatedly with a metal police baton, or an asp, in the head and back during a chase. The jury returned a verdict of guilty on Count II following the trial that began December 15, 2014.

The incident in question occurred in the early hours of November 24, 2011, while Zamiar was the Deputy Chief of the Midlothian Police Department. James Snyder was at Durbin's Bar in Midlothian, Illinois, on the evening of November 23, 2011, with his girlfriend. Zamiar was conducting surveillance of Durbin's from across the street when a large crowd of people gathered. Zamiar called to fellow Midlothian Police that there was a fight at Durbin's. Zamiar then drove over to Durbin's, parked his car, and walked through the parking lot of a donut shop adjacent to

1

Durbin's. Zamiar was dressed in plain clothes, when he approached Snyder in the donut shop parking lot he did not show his badge or otherwise identify himself as a police officer. Snyder turned and ran when Zamiar drew his baton. As Snyder ran, Zamiar struck him several times with the baton.

**Legal Standard**

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). We "approach such motions with great caution and are wary of second-guessing the determinations of both judge and jury." *United States v. Westmoreland*, 712 F.3d 1066, 1072 (7th Cir. 2013) (quoting *United States v. McGee*, 408 F.3d 966, 979 (7th Cir. 2005)). "The court should grant a motion for a new trial only if the evidence 'preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'" *United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007) (quoting *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989)).

**Discussion**

Zamiar moves for a new trial on three major bases: first, that the Court's pre-trial and trial rulings denied Zamiar his Fifth and Sixth Amendment right to present his defense; second, that Zamiar was denied a fair trial by the prosecutor's improper statements in closing argument; and, third, that the Court committed plain error in the jury instructions by failing to charge that willfulness is an element of the offense or to define that special term. The Court will address each argument in turn.

1. *Fifth and Sixth Amendment Right to Present a Defense*

Zamiar argues that the Court's rulings regarding three witnesses restricted his ability to present his defense to such a degree as to deny him a fair trial. Zamiar first asserts that he should have been allowed to question James Snyder regarding his gambling activities in the days following

his alleged beating by Zamiar. The Court granted the government's motion to exclude evidence of Snyder gambling, but ruled that defense counsel could elicit testimony from Snyder that he was not "bedridden" and was not seeking medical attention the day after the alleged beating. Defense counsel moved for reconsideration of the Court's ruling prior to commencing the cross-examination of Snyder. Defense counsel argued that the government had elicited testimony from Snyder that he had gone home from the police station to cook Thanksgiving dinner for his family. It is defense counsel's position that this testimony suggested good character and thus opened the door to defense being able to inquire whether he went to a casino. Zamiar argues that, by denying him the opportunity to ask leading questions to specifically delve into Snyder's visit to the casino in the days following the incident, the Court denied him a fair trial.

The Court however allowed defense counsel some latitude, permitting inquiry into Snyder's other activities, and if Snyder offered that he had gone to a casino further inquiry would be allowed. Snyder did not offer testimony that he had visited a casino, but the Court permitted defense counsel to attempt to refresh his recollection of his whereabouts with the records from the Horseshoe Casino. Snyder still stated that he did not recall where else he went Thanksgiving weekend before seeking medical attention. (Dkt. 87, Trial Tr. at 210). Defense counsel elicited from Snyder indicating that he did not seek medical attention until several days after the incident, which clearly contradicted his testimony that he was in extreme pain. Contrary to Zamiar's assertion, gambling is not indicative of witness credibility. Zamiar was attempting to use Snyder's supposed trip to the casino to show bad character, not to show that he must not have been as severely injured as he claimed since defense counsel was able to make that point. The point that Snyder was not so severely injured as to seek immediate medical attention, but instead waited several days, is not bolstered by what Snyder was specifically doing in the interim. Accordingly, this Court finds that if

3

there was any error in the Court's restriction of his testimony, it was harmless and Zamiar suffered no prejudice by its exclusion. *United States v. Mokol*, 646 F.3d 479, 486 (7th Cir. 2011).

Next, Zamiar argues that the Court restricted the cross-examination of Sergeant Edmund Olmos by prohibiting the defense from establishing that he knew Snyder because he had previously arrested him. While the Court granted the government's motion *in limine* excluding proof of Snyder's prior misdemeanor conviction, that ruling did not bar testimony of Snyder's arrest. Once Sgt. Olmos referred to Snyder as "Jimmy," defense counsel sought to inquire as to the nature of the relationship. Zamiar contends that the Court was too restrictive by only allowing him to ask "do you know him from prior interactions?" and that he should have been allowed to bring out whether Olmos had arrested Snyder.

Contrary to Zamiar's argument, the Court properly excluded inquiry into Snyder's prior arrests. Under Federal Rule of Evidence 609(b), prior bad acts are only admissible if such acts are "probative of truthfulness or untruthfulness." The Court allowed defense counsel to inquire whether Olmos and Snyder were friends and whether they had prior interactions. Olmos' testimony that he and Snyder were not friends, but had had prior interactions, does not lead to the conclusion that the Court's exclusion of the prior arrests lead to a "sanitized and inaccurate picture of the defendant's accuser". It is more likely that the jury would conclude from the permitted testimony that Snyder was well known to police. Whether Olmos had arrested Snyder on previous occasions was simply not relevant or probative of any fact. The fact that Olmos knew Snyder from his prior arrests has no bearing in this case on Snyder's reliability for telling the truth. *See United States v. Miles*, 207 F.3d 988, 993 (7th Cir. 2000).

Zamiar also argues that the Court unduly limited the testimony of defense expert Dr. Nancy Jones. Zamiar sought to call Dr. Jones to give three opinions: (1) that Snyder's bruises were consistent with having been inflicted with an ASP baton; (2) that the bruises are inconsistent with

4

Snyder's version of events; and (3) that the bruises were consistent with Zamiar's version of events. The Court granted in part the government's motion *in limine* to exclude Dr. Jones' testimony, barring Dr. Jones from testifying as to the manner in which the wounds were inflicted but allowing that they were consistent with an Asp, and she could further testify to the physical position of the ASP when contact was made, based only on the examination of the bruises, if that opinion was possible and elicited with sufficient foundation. (Dkt. 57). Zamiar moved for reconsideration, which the Court denied.

The Court excluded Dr. Jones' opinions about how the bruises occurred because they were not based on her medical expertise as a forensic pathologist and examination of Snyder's wounds or other scientific basis. Indeed, her excluded opinions were not the result of tests she performed on the force and impact of a baton from any particular vantage point or similar scientific analysis. *See United States v. Mamah,* 332 F.3d 475, 478 (7th Cir. 2003) (upholding the exclusion of an expert's testimony because there was too large a gap between the data and the opinion proffered). Accordingly, this Court found that to allow Dr. Jones to proffer those opinions at trial would improperly bolster and corroborate defendant's version of events without basis in her medical or scientific expertise. The Court reaches the same conclusion now.

*2. Closing Argument*

Zamiar also argues that the prosecutor's statements in closing argument denied him a fair trial. Zamiar asserts that during the government's rebuttal argument the prosecutor improperly argued that Zamiar had admitted in his own testimony that he had committed the crime charged. The Court sustained an objection, but, Zamiar argues, the government continued to misrepresent Zamiar's testimony.

Courts use a two-step inquiry to determine whether a prosecutor's comments during closing arguments constitute misconduct. *United States v. Sandoval*, 347 F.3d 627, 631 (7th Cir. 2003). "First, it

5

must be determined whether the comments themselves were improper." *Id.* (citing *United States v. Anderson*, 303 F.3d 847, 854 (7th Cir. 2002)). Second, if the Court finds the comments are improper, then the Court considers whether the statements taken in the context of the entire record, deprived the defendant of a fair trial. *Sandoval,* 347 F.3d at 631. When making this determination, the Court considers several factors, including: "(1) the nature and seriousness of the misconduct; (2) the extent to which the comments were invited by the defense; (3) the extent to which the prejudice was ameliorated by the court's instruction to the jury; (4) the defense's opportunity to counter any prejudice; and 5) the weight of the evidence supporting the conviction." *Id.* (quoting *United States v. Amerson*, 185 F.3d 676, 686 (7th Cir. 1999)).

Zamiar objects to the argument in rebuttal where the prosecutor asserts that Zamiar admitted guilt of the crime charged. The prosecutor stated, "And when you see that use of force form back before the defendant was charged, what did he write? Active resister. Guy pulling away from me. Ladies and gentlemen, by the defendant's own admission he committed this crime." (Dkt. 91, Trial Tr. at 703: 24 - 704: 3). The Court sustained an objection from defendant and the prosecutor adjusted his argument. He went on:

> "By the defendant's own admission in that form he shouldn't have used the force he did. I asked the defendant, when you have an active resister, are you allowed to use a baton? And he said point blank no. But guess what ladies and gentlemen, that's what he wrote on that use of force report. And you didn't see on that use of force report any note or any asterisks in the corner written in there by the defendant, asterisks in the corner, see my criminal complaint, see my police report for more information about the other injuries, things like that. No. You don't see it." (Dkt. 91, Trial Tr. at 704: 9 - 18).

Zamiar argues that a mistrial should have been granted. The Court denied the motion for mistrial because the Court did not believe the statements were burden shifting. Indeed, the adjustment matches the testimony elicited from Zamiar. The sustained objection coupled with the Court's instructing of the jury that what the lawyers say is not evidence and the instructions regarding who

has the burden and what the government must prove is sufficient to stave off any prejudice that may have resulted from the prosecution's initial rebuttal argument.

The other instance which Zamiar asserts constituted misconduct was the prosecutor's insinuation that Zamiar's credibility was undermined simply because he was criminally charged. The prosecutor argued, "pictures don't lie, but defendants can. Because unlike every other witness who testified in this courtroom, this defendant was the only one facing federal criminal charges. This defendant was the only one on trial." (Dkt. 91 at 703). Zamiar contends that the implication that Zamiar had a unique incentive to lie is highly misleading and is inconsistent with the presumption of innocence.

However, it is not per se misconduct for a prosecutor to call a criminal defendant a liar. *See United States v. Spivey*, 859 F.2d 461, 466 (7th Cir. 1988). While this Court does not disagree that, when viewed in a vacuum, statements suggesting that a criminal defendant lacks credibility merely because he is charged with a crime would be improper, here however, in the context of Zamiar having filled out the incident report stating that he had swung for the legs and missed, the suggestion that Zamiar has lied is less damning. The prosecutor was arguing that *before* Zamiar was charged with any offense he filled out the form incorrectly and the prosecutor suggested that Zamiar intentionally misrepresented the incident because he knew he may have improperly used force. These are reasonable inferences to draw from the evidence adduced at trial. Moreover, it was ultimately for the jury to decide simply whose version of the incident they believed – Zamiar's or Snyder's version. Each had issues relating to their credibility that were elicited at trial and the jury was presented with ample evidence of Snyder's injuries to determine that Zamiar's use of force was excessive.

*3. Jury Instructions*

Lastly, Zamiar argues that the Court committed plain error by failing to instruct the jury that willfulness is an element of the offense or to define that special term. Zamiar asserts that, though the Court instructed the jury as to the elements of the offense consistent with the Seventh Circuit's pattern jury instruction, the Court nevertheless erred by failing to include an explanation or definition of willfulness.

The Court instructed the jury that one of the elements of the crime charged was that the "defendant intended to deprive James Snyder" of his "right to be free from the use of unreasonable force by a person acting under color of law[.]" (Dkt. 72 at 2). As Zamiar admits, the instruction given was consistent with the Seventh Circuit's pattern jury instruction. Zamiar refers to *United States v. Bradley*, 196 F.3d 762, 770 (7th Cir. 1999), for the proposition that the Court should have instructed the jury that defendant must have acted "willfully" and must have defined that term for the jury in order to properly instruct the jury on the elements of the crime under 18 U.S.C. § 242. Yet, in *Bradley,* the Seventh Circuit upheld an instruction that stated the defendant must have "*intended* to deprive [the victim] of his right…" *Id.* The court further instructed the jury that to find Bradley guilty he must have "acted with the requisite specific intent, that is, that he specifically intended to do that which the law forbids." *Id.* The Seventh Circuit found these instructions adequate and specifically stated that the instructions need not include a definition of willfulness where the other instructions sufficiently articulate the intent requirement of § 242. This Court believes the instructions provided sufficiently articulated the intent requirement of § 242 by providing that Zamair must have *intended* to deprive Snyder of his rights.

**Conclusion**

Based on the foregoing discussion, defendant Zamiar's motion for a new trial [75] respectfully is denied.

IT IS SO ORDERED.

Date: May 19, 2015

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge